UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MACK TRUDELL,                           )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        No. 4:20 CV 639 RWS
                                        )
ANDREW SAUL,                            )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

## MEMORANDUM AND ORDER

Plaintiff Mack Trudell brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of the Commissioner's decision denying his application for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401. Section 205(g)  of the Act, 42 U.S.C. § 405(g), provides for judicial

review of a final decision of the Commissioner.  Because the Commissioner's final

decision is supported by substantial evidence on the record as a whole, I will affirm

the decision of the Commissioner.

### Procedural History

Plaintiff was born in 1966 and alleges he became disabled beginning March

8, 2016, because of herniated discs, osteoarthritis, centrilobular emphysema,

coronary artery disease, angina, obstructive sleep apnea, mixed hyperlipidemia,

hypertension, gastroesophageal reflux disease, and left ventricular hypertrophy.
(Tr. 210, 224).   Plaintiff's date last insured was June 30, 2016.  (Tr. 65, 235).

Plaintiff's application was initially denied on August 30, 2017.  (Tr. 126).
After a hearing before an ALJ on January 10, 2019, the ALJ issued a decision
denying benefits on March 7, 2019.  (Tr. 60-76).  On April 8, 2020, the Appeals
Council denied plaintiff's request for review.  (Tr. 1).  As a result, the ALJ's
decision is the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in her
assessment of his residual functional capacity.  Plaintiff contends that he is limited
to sedentary work and therefore is disabled under the GRIDS.  He asks that I
reverse the Commissioner's final decision and remand the matter for further
evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt
plaintiff's recitation of facts (ECF #15) to the extent they are admitted by the
Commissioner (ECF #16-1) as well as the additional statement of facts submitted
by the Commissioner (ECF #16-2) as they are unrefuted by the plaintiff.
Additional specific facts will be discussed as needed to address the parties'
arguments.

## Discussion

A.   Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that

3

which significantly limits his ability to do basic work activities.  If the claimant's

impairment(s) is not severe, then he is not disabled.  The Commissioner then

determines whether claimant's impairment(s) meets or equals one of the

impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's

impairment(s) is equivalent to one of the listed impairments, he is conclusively

disabled.  At the fourth step, the Commissioner establishes whether the claimant

can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the

Commissioner evaluates various factors to determine whether the claimant is

capable of performing any other work in the economy.  If not, the claimant is

declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial

evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240

F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial

evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th

Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the claimant, even if it is

uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole.  *See*

*e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the

subjective complaints, the ALJ is required to consider whether a claimant's

subjective complaints are consistent with the medical evidence.  *See Polaski v.*

*Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily

activities, the duration, frequency, and intensity of the pain, precipitating and

aggravating factors, dosage, effectiveness and side effects of medication, and

functional restrictions).[1]  When an ALJ gives good reasons for the findings, the

---

[1] This was once referred to as a credibility determination, but the agency has now eliminated use
of the term "credibility" to clarify that subjective symptom evaluation is not an examination of
an individual's character.  However, the analysis remains largely the same, so the Court's use of

court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696

(8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full

and fair record in the non-adversarial administrative proceeding.  *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

    In her written decision, the ALJ found that plaintiff had not engaged in

substantial gainful activity since the alleged onset date of March 8, 2016 through

his date last insured of June 30, 2016.  The ALJ found that plaintiff had the

following severe impairments: degenerative disc disease, coronary artery disease,

and peripheral vascular disease.  The ALJ determined that plaintiff's impairments

or combination of impairments did not meet or medically equal a listed impairment

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 65.)  The ALJ found plaintiff to

have the residual functional capacity (RFC) to perform light work with the

following limitations:

> [Claimant can] occasionally climb ramps and stairs but never ladders,
> ropes and scaffolds; occasionally stoop, kneel, crouch and crawl;
> frequently reach and handle; with no exposure to unprotected heights,
> hazardous machinery and less than occasional exposure to pulmonary
> irritants and extreme temperatures.

---

the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the
intensity, persistence, and limiting effects of symptoms are consistent with the objective medical
evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25,
2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 2020 WL 4375088, at
*5, n.6 (8th Cir. Jul. 31, 2020) (noting that SSR 16-3p "largely changes terminology rather than
the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

6

(Tr. 66.)  The ALJ relied upon vocational expert testimony to support a conclusion that plaintiff could not perform his past relevant work as a roofer  (Tr. 72.), but that there were significant jobs in the economy of router, office helper, and mail room clerk that plaintiff could perform.  (Tr. 73.)  The ALJ therefore found plaintiff not to be disabled.  (Tr. 73.)

Plaintiff claims that this decision is not supported by substantial evidence because there is no medical opinion in the record that addresses plaintiff's physical ability to function in the workplace and supports his RFC.

C.    RFC

Plaintiff argues that the ALJ erred when formulating his RFC because there is no medical opinion upon which the ALJ could have based her RFC assessment. RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

According to plaintiff, the ALJ should have determined that he was limited to sedentary work, which under the GRIDS would have mandated a finding of

disabled given his age (50), limited education, and no past transferrable skills.

Here, the ALJ properly formulated plaintiff's RFC only after evaluating his

subjective symptoms and discussing the relevant evidence, including his testimony,

the medical evidence, and his daily activities.  After consideration of all this

evidence, the ALJ concluded that plaintiff retained the capacity to perform light

work, with modifications tailored to his credible limitations.  In so doing, she did

not substantially err.

Plaintiff alleges an onset date of March 8, 2016.  To be eligible for benefits,

plaintiff must establish that he was disabled prior to the expiration of his insured

status on June 30, 2016. (Tr. 65, 235.)  See 20 C.F.R. §§ 404.130, 404.131;

*Hensley v. Colvin*, 829 F.3d 926, 929 (8th Cir. 2016) (A claimant must prove

disability prior to the expiration of his insured status under Title II.).   Here,

plaintiff points to no evidence in the record which establishes an inability to

perform a restricted range of light work during the relevant time period – that is,

between March 8, 2016 (his alleged onset date) and June 30, 2016 (his date last

insured), which is a very short window of time.  *See id*. at 993 ("If an applicant for

disability benefits is not insured for Title II purposes, then we only consider the

applicant's medical condition as of his or her date last insured.").  Although

plaintiff complains of "no medical opinion" to support the RFC determination, it is

his burden to prove his RFC and the ALJ's responsibility to fashion his RFC based

8

on all relevant evidence in the record.  *See Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).  Plaintiff does not contend that he submitted any medical opinions or records from the relevant time period which the ALJ ignored or improperly evaluated, and a review of the file reveals no medical records from the relevant time period.

Despite the absence of medical records from the relevant time period, the ALJ thoroughly summarized all the medical evidence in the record, including the medical records predating plaintiff's onset date, in her formulation of plaintiff's RFC.  After careful consideration of the entire record, the ALJ incorporated into plaintiff's RFC those impairments and restrictions she found consistent with the evidence from the relevant period, and substantial evidence on a whole supports her determination. (Tr. 66-71.)  Although plaintiff submitted a medical source statement from Rama Nardy, M.D., which contained significant limitations (Tr. 523-24), that opinion was properly disregarded by the ALJ as it was rendered long after plaintiff's date last insured.[2]  A non-disabling condition that later develops

---

[2] After the ALJ decided his case, plaintiff also submitted the physician statement of Jesse Helton, D.O., to the Appeals Council as additional evidence in support of his claim.  Dr. Helton opines that plaintiff "can't work" because of a "long history of progressive degenerative spine and joint disease." (Tr. 58.)  Dr. Helton states that he has treated plaintiff "off and on since 2005," and despite plaintiff's "effort to 'work through' his arthritis over the years" his condition "has worsened to the point [plaintiff] can't work." (Tr. 58.)  The Appeals Council properly concluded that the opinion did not support plaintiff's application for benefits because it was rendered on May 16, 2019, long after his date last insured.  Moreover, although Dr. Helton indicates a long treatment history with plaintiff, he specifically notes that plaintiff's condition was progressive in nature.  Because Dr. Helton does not indicate that plaintiff was suffering from

into a disabling condition after the expiration of a claimant's insured status cannot

be the basis for an award of disability benefits under Title II.  *See Turpin v. Colvin*,

750 F.3d 989, 994-95 (8th Cir. 2014).

Plaintiff's treatment notes and objective medical evidence of record

demonstrated limitations consistent with the ALJ's RFC determination.  (Tr. 67-

71.)  As stated above, there were no treatment records from the relevant period to

support his allegations, and the evidence from prior to his onset date showed that

he was capable of performing a restricted range of light work.  (Tr. 66.)  In October

2015, physical examination by neurosurgeon Mark Rivkin, D.O., revealed full

motor strength in all extremities, intact sensation, normal reflexes, no joint

tenderness, no Hoffmans or clonus, no pronator drift, and normal gait.  (Tr. 70,

331).  And while an MRI of plaintiff's lumbar spine showed some degenerative

disc disease, there was only "mild" disc bulge and "mild" neuroforaminal stenosis

at L5-S1, a small annular tear at L5-S1 and disc protrusion at L1-2, but no

compression of the nerve tissue (Tr. 324, 336.)  A January 2015 physical

examination with R. Peter Mirkin, M.D., an orthopedist, showed slight lumbar

range of motion restriction, but also upright gait and intact motor and sensory

results.  (Tr. 69, 325.)   Dr. Mirkin reviewed the MRI and did "not see any severe

---

disabling limitations during the relevant time period, the Appeals Council did not substantially
err in refusing the consider this evidence and substantial evidence on the record as a whole
supports the ALJ's decision to deny benefits.

neurocompressive disease." (Tr. 324.)  Additionally, the evidence from Jesse

Helton, D.O., plaintiff's primary care physician, documented some decreased

range of motion and tenderness, but also showed normal reflexes, normal

coordination, and no cranial nerve deficit.  (Tr. 69, 418, 420, 422.)  These

generally mild objective findings are consistent with the RFC determination of

light work, with modifications.

As for plaintiff's argument that the ALJ should have ordered a consultative

examination prior to reaching her decision, a State agency medical consultant,

Denise Trowbridge, M.D., reviewed the medical evidence of record in August,

2017.  (Tr. 116-20.)  This evidence included plaintiff's January 2015 MRI of the

lumbar spine and Dr. Helton's treatment notes. (Tr. 116-20.)  However, she found

"overall insufficient evidence to assess severity and [RFC]."  (Tr. 120.)   Plaintiff

does not argue that Dr. Trowbridge ignored evidence that was in the record at the

time of her review, nor can he show that ordering a consultative examination after

her review in 2017 (already more than a year after his date last insured) would

have provided relevant evidence as to his limitations prior to his date last insured

or otherwise changed the outcome of this case.[3]  The ALJ noted Dr. Trowbridge's

_____

[3] Plaintiff did not apply for disability benefits until July 2017, so any additional examination at that point would have related to his condition only after his Title II insured status expired and therefore would have been irrelevant to the ALJ's determination of disability during the relevant period of March 2016 to June 2016.

11

review but did not rely on it in reaching her decision because Dr. Trowbridge was

unable to render any opinion with respect to plaintiff's limitations given the lack of

medical evidence.[4]  (Tr. 71.)   In doing so, the ALJ did not substantially err as the

sparse medical evidence as to plaintiff's limitations during the relevant time period

fails to support a finding of disability.

     As discussed above, Plaintiff submitted no medical evidence from the

relevant time period, and the evidence prior to his onset date revealed conservative

treatment, generally mild examination findings, and improvement with treatment.

Because sufficient evidence on the record as a whole supports the ALJ's RFC

determination, she was not required to order additional consultative examinations

of the plaintiff, particularly where such an examination would not yield any

relevant information regarding plaintiff's limitations as of his date last insured. *See*

*Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) ("[T]he ALJ is required to

order further medical examinations only if the existing medical record does not

provide sufficient evidence to determine whether the claimant is disabled.")

---

[4] Plaintiff's medical records were also reviewed by a psychological consultant to obtain a
Psychiatric Review Technique assessment of plaintiff.  The assessment notes a 2014 diagnosis of
anxiety/depression.  (Tr. 121.)  However, like Dr. Trowbridge, Kim Dempsey, PsyD., was unable
to provide an opinion as to the severity of any alleged mental impairments and his mental
residual functioning given the lack of medical evidence.  (Tr. 121-22.)  Plaintiff does not allege
mental impairments in his application for benefits (Tr. 224), and the ALJ did not include any
mental limitations in plaintiff's RFC.  Plaintiff does not allege that the ALJ erred by failing to
include mental limitations in his RFC, so the Court does not address this evidence other than to
note that, like Dr. Trowbridge's opinion, the ALJ acknowledged Ms. Dempsey's opinion but did
not rely on it in her RFC determination.

(quoting *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011)).  It is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in her determination of plaintiff's RFC.  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

Here, in addition to consideration of the medical evidence, the ALJ properly formulated plaintiff's RFC only after evaluating his subjective symptoms and discussing the relevant evidence, including his testimony and daily activities. After consideration of all this evidence, the ALJ found that his allegations were not fully consistent with the medical evidence and other evidence in the record.  (Tr. 67, 71.)  Plaintiff argues that the ALJ erred in evaluating his subjective complaints of pain by failing to account for his varying levels of pain.  When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c); SSR 16-3p.  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218.  I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily

13

activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints of pain . . . and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).  It is not enough that the record contains inconsistencies.  Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ summarized plaintiff's testimony regarding his daily activities and subjective allegations of pain and found plaintiff's statements about the intensity, persistence, and limiting effects only partially consistent with the evidence of record.  The ALJ acknowledged plaintiff's reported symptoms, including pain, and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3).  The ALJ was not required to

fully credit all of plaintiff's assertions regarding his limitations given his activities, which included driving, shopping in stores with his wife, managing his finances, spending time with others watching television, playing cards, attending church regularly, and using the computer.  (Tr. 67, 212-23.)  *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).  "Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."  *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

The medical evidence of record also supports the ALJ's findings and was properly considered by the ALJ as one factor when assessing plaintiff's credibility and evaluating his subjective complaints of pain.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).   Although plaintiff testified that he experienced "excruciating pain" three to four days a week and that he was limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and using his hands, there are no medical records from the relevant period to demonstrate that he sought treatment for these symptoms.  His 2015 examination by Dr. Rivkin revealed normal results, and his 2015 examination with Dr. Mirkin showed only slight lumbar range of motion restriction with an upright gait and intact motor and sensory results.  (Tr.

325, 331.)  The same is true of Dr. Helton's examinations of plaintiff, which
showed some decreased range of motion and tenderness, but also showed normal
reflexes, normal coordination, and no cranial nerve deficit.  (Tr. 418, 420, 422.)
An MRI of Plaintiff's lumbar spine showed some degenerative disc disease, but
only "mild" disc bulge and "mild" neuroforaminal stenosis at L5-S1 with no
compression of the nerve tissue. (Tr. 331, 334.)   Here, after summarizing the
objective medical evidence of record the ALJ properly concluded that plaintiff's
subjective complaints of pain were of limited credibility because they were not
supported by the objective medical evidence of record, an important factor for
evaluating a claimant's credibility.  *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir.
1995).

 Additionally, the ALJ also properly considered the fact that, despite
plaintiff's allegation of disabling back pain,  plaintiff had no treatment notes
addressing his back pain from the relevant period and received fairly sporadic
treatment for his back pain even before the relevant period. (Tr. 71.)  Moreover the
treatment he did receive was consistent and conservative, consisting primarily of
narcotic pain medication, and generally successful at controlling his symptoms.
(Tr. 418, 420, 424.)  In September 2015, plaintiff told Dr. Helton that his back pain
was tolerable as long as he took his pain medication.  (Tr. 419.)  Three months
later, he said his lumbar disc pain was "recently well controlled."  (Tr. 418.)  If a

16

claimant's pain is controlled by treatment or medication, it is not considered

disabling.  *See Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015).[5]

The ALJ also properly considered the fact that plaintiff ignored prescribed

treatments for his back pain when evaluating his subjective allegations of pain.  Dr.

Mirkin recommended that plaintiff stop taking narcotics in January 2015, instead

recommending physical therapy.  (Tr. 325.)  Plaintiff "declined those [options.]"

(Tr. 325.)  Similarly, in October 2015, Dr. Rivkin also concluded that plaintiff's

intermittent back pain did not require surgery and instead recommended only

physical therapy.  (Tr. 332.)   Despite these recommendations, plaintiff refused to

try physical therapy because he "just didn't think it was going to do any good."

(Tr. 92-93.)  *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's

conclusions as to the severity of pain and limitations consistent with fact that

claimant was prescribed generally conservative treatment, including repeated

suggestions of therapy).  Plaintiff also failed to heed the advice from Manzoor

Tariq, M.D., his cardiologist, to stop smoking, begin an exercise program, and

manage his weight.  (Tr. 284, 291-92, 304, 341, 351, 357, 387-88, 391, 394, 397.)

---

[5] The same is true of any allegations of pain relating to plaintiff's heart condition, as plaintiff's February 2014 cardiac stent placement worked well to manage his heart disease.  (Tr. 71.)  After the procedure, plaintiff had generally normal cardiac examinations and denied any chest pain. (Tr. 345, 350, 356, 387, 390, 393, 396.)  In fact, plaintiff stated that he was "feeling well" and had no complaints in August and December 2014.  (Tr. 350, 396.)

17

Instead plaintiff gained weight between December 2014 and January 2016 and continued to smoke.  (Tr. 387-88, 390, 393, 397.)  In evaluating plaintiff's subjective complaints of pain, "an ALJ may properly consider the claimant's . . . failing to take prescription medications, seek treatment, and quit smoking." *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (citations omitted).

The ALJ expressly acknowledged that plaintiff was experiencing pain, but concluded, after evaluating the entirety of the record, that plaintiff's pain was not so severe as to be disabling.  Where, as here, an ALJ seriously considers but for good reasons explicitly discounts a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination.  *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).  The ALJ evaluated all of the medical evidence of record and adequately explained her reasons for the weight given this evidence.   Substantial evidence in the record as a whole supports the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

D.    GRIDS

Finally, plaintiff argues that the ALJ erred in finding him not disabled because he met the requirements to qualify for disability benefits on March 8, 2016, when he turned 50 years old, based on the medical-vocational guidelines

(GRIDS).  Plaintiff's argument fails because the ALJ properly found that plaintiff

was capable of light (as opposed to sedentary) work, so the GRIDS provide that a

person such as plaintiff (closely approaching advanced age, with limited or

marginal education, who is not illiterate, with unskilled past work, who can

perform light work) is not disabled.  20 C.F.R. pt. 404, subpt. P, app. 2, table 2 §

202.10.   Moreover, because plaintiff had nonexertional limitations such as pain,

the GRIDS cannot be used to direct a conclusion of disabled without regard to

other evidence, such as vocational evidence.  *See Simons v. Sullivan*, 915 F.2d

1223, 1225 (8th Cir. 1990).

Here, the ALJ found that plaintiff was limited to light work with additional

nonexertional limitations and could not perform his past relevant work as a

roofer. (Tr. 66.)  Therefore, the ALJ properly met her burden at step five to show

that plaintiff could perform other work existing in significant numbers in the

national economy by questioning a vocational expert (VE).  (Tr. 108-10.)  The

VE testified that a hypothetical claimant with plaintiff's credible limitations could

work as a router, office helper, and hand packager.  (Tr. 109.)  Based on the VE's

testimony, the ALJ determined that plaintiff could perform other work that

existed in significant numbers in the national economy and in so doing, she did

not substantially err.  (Tr. 72-73.)  *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th

Cir. 1994) (VE's response to a complete and correctly phrased hypothetical

provides substantial evidence for the ALJ's step-five conclusion).  Thus, the decision of the Commissioner must be affirmed.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Mack Trudell's complaint is dismissed with prejudice.

20

A separate Judgment is entered herewith.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 2nd day of April, 2021.